## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CAMPAIGN LEGAL CENTER<br>1101 14th Street NW, Suite 400<br>Washington, DC 20005,<br><br>                Plaintiff,<br><br>        v.<br><br>HERITAGE ACTION FOR AMERICA,<br>214 Massachusetts Ave NE, Suite 400<br>Washington, DC 20002<br><br>              Defendant. | Civil Action No. <u>  22-1248  </u> |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Defendant Heritage Action for America ("Heritage Action") spent hundreds of thousands of dollars on election advertising supporting specific congressional candidates in the weeks leading up to the 2018 midterm federal elections but failed to disclose the contributors who paid for its spending in violation of the Federal Election Campaign Act ("FECA" or "Act"), 52 U.S.C. § 30101, *et seq*.

2.      FECA regulates "federal political campaign financing, *inter alia*, by imposing limitations on contributions and requiring disclosure of persons contributing money for expenditures to influence federal elections." *Citizens for Responsibility & Ethics in Washington ("CREW") v. FEC*, 316 F. Supp. 3d 349, 367-68 (D.D.C. 2018), *aff'd*, 971 F.3d 340 (D.C. Cir. 2020). By enacting FECA, Congress "recognized the value of disclosure as a means of enabling the electorate to make informed decisions about candidates, to evaluate political messaging, to

deter actual, or the appearance of, corruption, and to aid in enforcement of [FECA's] ban on foreign contributions, which may result in undue influence on American politicians." *Id.* at 355.

3. To promote these goals, FECA requires groups like Defendant Heritage Action to disclose their contributors when such groups spend in excess of $250 in a calendar year expressly advocating for the election or defeat of a clearly identified candidate for federal office. *See* 52 U.S.C. § 30104(c).

4. In September 2018, just seven weeks before the November 6 federal elections, Heritage Action spent more than $300,000 expressly advocating for the election or defeat of a dozen clearly identified candidates for federal office. Nevertheless, Heritage Action's subsequent reporting to the Federal Election Commission ("FEC" or "Commission") failed to publicly disclose any of its contributors, as required by 52 U.S.C. § 30104(c). To this day, Heritage Action's FEC disclosures have never been amended or supplemented to report Defendant's contributors.

5. By failing to publicly disclose the information required by FECA, Defendant has violated its legal obligation to inform the electorate about who paid for Defendant's candidate advocacy.

6. Defendant's illegal failure to disclose its contributors harmed and continues to harm Plaintiff Campaign Legal Center ("CLC") by depriving it of information to which it is statutorily entitled, and which CLC uses to carry out its organizational mission, including assisting voters in evaluating candidates for public office.

7. Plaintiff CLC brings this action under 52 U.S.C. § 30109(a)(8)(C), to remedy Defendant's violations of FECA's independent expenditure contributor-reporting requirements found at 52 U.S.C. § 30104(c) (hereafter "Contributor-Reporting Requirements").

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 52 U.S.C. § 30109(a)(8)(C) and 28 U.S.C. § 1331.

9.     Pursuant to D.C. Official Code § 13-423, this Court has personal jurisdiction over Defendant Heritage Action, which has its principal place of business in the District of Columbia and transacts business within the District of Columbia, including the filing of campaign finance reports with the FEC. *See also* Fed. R. Civ. P. 4(k).

10.     Venue lies in this district under 28 U.S.C. § 1391(b)(1), (2), (c)(2).

11.     This Court has authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201(a) and 2202, and 52 U.S.C. § 30109(a).

## THE PARTIES

12.     Plaintiff CLC is a nonpartisan, nonprofit organization headquartered in Washington, D.C., whose mission is to protect and strengthen the U.S. democratic process through research, education, litigation, and other legal and policy advocacy. CLC participates in judicial and administrative matters throughout the nation regarding campaign finance, voting rights, redistricting, and government ethics issues.

13.     As part of this work, CLC conducts research, publishes reports and articles, and regularly provides expert legal analysis to the media. CLC also litigates campaign finance matters throughout the country; files administrative complaints with the FEC to seek enforcement action against individuals and organizations that violate the law; participates in rulemakings and advisory opinion proceedings before the FEC to ensure that the Commission is properly interpreting and enforcing federal campaign finance laws; and advocates for legislative reform measures at the federal, state, and local levels of government.

14.     CLC's work on campaign finance issues—including the organization's public education, litigation, administrative advocacy and enforcement, and legislative reform efforts—depends on accurate and complete campaign finance reporting as required by statute. CLC works to ensure that the public at large has access to critical information regarding the financing of U.S. election campaigns, including who is spending money to influence federal elections. It expends significant resources assisting members of the media in their investigations into candidates' financial support and their relationships with donors, so that the public is fully equipped with the information necessary to evaluate candidates and political messaging, and so that voters can cast informed votes on Election Day. CLC also relies on accurate and fully disclosed federal campaign finance information to support its administrative practice before the FEC and state campaign finance agencies, and to defend campaign finance laws in its active docket in federal and state courts.

15.     This work is obstructed where, as here, campaign finance information subject to mandatory disclosure under FECA is not available. CLC has a cognizable interest in the underlying information that an entity making independent expenditures, such as Heritage Action, has not accurately or fully disclosed to the FEC. Without this information, CLC's campaign finance advocacy, public education work, and legislative reform efforts are inhibited.

16.     The withholding of information to which CLC is legally entitled also forces CLC to divert resources from other projects to further CLC's mission to attempt to obtain the information through other channels, including research for alternative sources of information, administrative enforcement, and litigation.

17.     Defendant Heritage Action is a social welfare organization exempt from income tax under Section 501(c)(4) of the Internal Revenue Code.[1] It reports independent expenditures with the Commission under FEC ID: C90013525. Defendant's office is located at 212 Massachusetts Ave, NE, Washington, D.C. 20002.

## LEGAL FRAMEWORK

18.     FECA regulates "federal political campaign financing, *inter alia*, by imposing limitations on contributions and requiring disclosure of persons contributing money for expenditures to influence federal elections." *CREW*, 316 F. Supp. 3d at 367-68. By enacting FECA, Congress "recognized the value of disclosure as a means of enabling the electorate to make informed decisions about candidates, to evaluate political messaging, to deter actual, or the appearance of, corruption, and to aid in enforcement of the ban on foreign contributions, which may result in undue influence on American politicians." *Id.* at 355.

19.     The FECA disclosure requirements at issue in this case apply to persons "other than political committees." 52 U.S.C. § 30104(c). Under FECA, "person" is broadly defined as "an individual, partnership, committee, association, corporation, labor organization, or any other organization or group of persons," except for the federal government. 52 U.S.C. § 30101(11). A "political committee" (also known as a "PAC") is any "group of persons" that has the major purpose of electing a federal candidate, and that receives or spends more than $1,000 in a year to influence federal elections. 52 U.S.C. § 30101(4)(A); *see Buckley v. Valeo*, 424 U.S. 1, 79 (1976) (*per curiam*). Because PACs, by definition, have the major purpose of electing a federal candidate,

---

[1]     *See* Heritage Action for America, Return of Organization Exempt from Income Tax, IRS Form 990 (filed June 29, 2017), https://projects.propublica.org/nonprofits/organizations/272244700/201711809349300126/IRS990 (last accessed May 3, 2022).

they are subject to comprehensive organizational, record-keeping, and disclosure requirements. *See* 52 U.S.C. § 30104(a)-(b).

20.     In contrast, and at issue here, FECA imposes event-driven disclosure requirements on persons other than PACs, when such persons make "independent expenditures." *See* 52 U.S.C. § 30104(c)(1)-(2). An independent expenditure is an expenditure that expressly advocates the election or defeat of a clearly identified federal candidate and is not coordinated with a candidate or political party. 52 U.S.C. § 30101(17); 11 C.F.R. § 100.16(a). Persons other than PACs that spend non-trivial amounts on independent expenditures must disclose those expenditures in quarterly reports to the FEC, *see* 52 U.S.C. § 30104(c)(2), and, depending on the amount and timing of the expenditures, also in reports filed within 48 or 24 hours after the expenditure, *see id.* § 30104(g). In addition to disclosing independent expenditures, a reporting entity's quarterly report must disclose certain of its contributors. *Id.* § 30104(c)(1)-(2).

21.     Specifically, FECA's Contributor-Reporting Requirements mandate that a person other than a PAC that makes independent expenditures aggregating in excess of $250 in a calendar year must file a quarterly report with the Commission disclosing, among other things, the identification of each "person (other than a political committee) who makes a contribution to the reporting [entity] during the reporting period . . . in excess of $200 within the calendar year," 52 U.S.C. § 30104(b)(3)(A) (cross-referenced in *id.* § 30104(c)(1)), and "the identification of each person who made a contribution in excess of $200 to the person filing such statement which was made for the purpose of furthering an independent expenditure," *id.* § 30104(c)(2)(C).[2]

---

[2]     "Contribution" consists of "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(8)(A)(i).

22.     Previous Commission regulations interpreted the Contributor-Reporting Requirements to require persons other than PACs to disclose each person from whom they received a contribution in excess of $200, but only if the "contribution was made for the purpose of furthering *the reported* independent expenditure." 11 C.F.R. § 109.10(e)(1)(vi) (emphasis added), *vacated by CREW*, 316 F. Supp. 3d at 423. Under this now-vacated regulation, a reporting entity only had to disclose contributors who specifically earmarked their contributions for the particular independent expenditure being reported to the FEC.

23.     On August 3, 2018, however, a court in this District held in *CREW v. FEC* that 11 C.F.R. § 109.10(e)(1)(vi) was invalid and contrary to the statute it purported to implement. 316 F. Supp. 3d at 423. The court explained that the regulation failed to implement the Contributor-Reporting Requirements in two ways. First, it "wholly fail[ed]" to implement section 30104(c)(1)'s requirement that a reporting entity "identify non-trivial donors, as well as the date and amount of their contributions, when the contributions were made for political purposes to influence any election for federal office." *Id.* Second, the vacated regulation also "impermissibly narrow[ed] the mandated disclosure in [section] 30104(c)(2)(C), which requires the identification of such donors contributing for the purpose of furthering the [advertiser's] express advocacy for or against the election of a federal candidate, even when the donor has not expressly directed that the funds be used in the precise manner reported." *Id.*

24.     On August 21, 2020, the U.S. Court of Appeals for the D.C. Circuit affirmed the district court's ruling in *CREW v. FEC*, holding that the Contributor-Reporting Requirements unambiguously mandate "that [independent expenditure] makers disclose each donation from contributors who give more than $200, regardless of any connection to [independent expenditures]

7

eventually made," and "that contributors be identified if their donations are 'made for the purpose of furthering *an* independent expenditure.'" *CREW v. FEC*, 971 F.3d 340, 351 (D.C. Cir. 2020).

25.    The *CREW v. FEC* Court's August 3, 2018 order vacating 11 C.F.R. § 109.10(e)(1)(vi) took effect on September 18, 2018.[3]

26.    On October 4, 2018, the FEC issued a press release offering "guidance to the public on how to proceed consistent with the district court's decision."[4] At the outset, the guidance acknowledged that *CREW v. FEC*'s interpretation of the Contributor-Reporting Requirements applied to "reports due after Sept. 18, 2018," the date the regulation was vacated.[5] At that time, the next quarterly report was due October 15, 2018.[6] However, the Commission stated it planned to "exercise its prosecutorial discretion for the quarterly reports due Oct. 15, 2018" in a limited capacity because of perceived "interests of fairness, since no one was on notice until the district court's decision was handed down on Aug. 3."[7] The Commission exercised that discretion by stating that it would enforce *CREW v. FEC*'s interpretation of the Contributor-Reporting Requirements only against persons other than PACs "that made independent expenditures on or

---

[3]    *See* Press Release, FEC, *U.S. Supreme Court vacates stay in CREW v. FEC (16-259)* (Sept. 19, 2018), https://www.fec.gov/updates/us-supreme-court-vacates-stay-crew-v-fec-16-259/ (last accessed May 3, 2022); *see also Crossroads Grassroots Policy Strategies v. CREW*, No. 18A274, 2018 WL 4441781 (U.S. Sept. 18, 2018) (lifting stay).

[4]    *See* Press Release, FEC, *FEC provides guidance following U.S. District Court decision in* CREW v. FEC*, 316 F. Supp. 3d 349 (D.D.C. 2018)* (Oct. 4, 2018), https://www.fec.gov/updates/fec-provides-guidance-following-us-district-court-decision-crew-v-fec-316-f-supp-3d-349-ddc-2018/ (last accessed May 3, 2022) (emphasis in original).

[5]    *Id.*

[6]    *See id.*

[7]    *Id.*

after Sept. 18, 2018 aggregating over $250 with respect to a given election."[8] Those persons, the

Commission explained, were required to report as follows:

> For contributions received between Aug. 4, 2018 (the date after the district court's opinion)
> and Sept. 30, 2018 (the end of the reporting period), the information required by 52 U.S.C.
> § 30104 (c)(1) and (c)(2)(C), which includes:
>
> - ■ the identification of each person (other than a political committee) whose
>   contribution or contributions to the reporting person had an aggregate amount or
>   value in excess of $200 within calendar year 2018, together with the date and
>   amount of any such contribution(s); and
>
> - ■ the identification of each of these persons whose contribution(s) in excess of $200
>   to the reporting person was made for the purpose of furthering any independent
>   expenditure.[9]

## **FACTS**

27.     Defendant Heritage Action is organized under section 501(c) of the Internal

Revenue Code and, as such, is a "person []other than a political committee," 52 U.S.C.

§ 30104(c)(1), subject to the Contributor-Reporting Requirements. *See CREW*, 316 F. Supp. 3d at

369.

28.     During the 2018 election cycle, Heritage Action spent large sums of money on

independent expenditures supporting congressional campaigns for a dozen Republican candidates

for the U.S. House of Representatives. In its FEC reports, however, Defendant failed to submit

mandatory disclosures of the donors who contributed to support Heritage Action's independent

expenditures.

---

[8]      *Id.*

[9]      *Id.*

29.     On August 3, 2018, the U.S. District Court for the District of Columbia's issued its ruling in *CREW v. FEC* vacating the Commission's impermissibly narrow regulation implementing the Contributor-Reporting Requirements. *See supra* ¶ 21.

30.     Five days later, on August 8, 2018, Heritage Action issued a press release declaring its intention to solicit and "spend $2.5 million and back 12 candidates this November."[10] The release included "the complete list of districts Heritage Action will be targeting" and identified twelve U.S. House candidates by name and congressional district.[11]

31.     That same day, August 8, 2018, *McClatchy*, a news agency in the District of Columbia, reported that "Heritage Action for America, the political arm of Washington's Heritage Foundation, has selected a dozen races for investment," and that "[t]he organization plans to spend at least $2.5 million, with the minimum investment in each district ranging between $200,000 and $400,000, Heritage Action officials told *McClatchy*, adding that they hope to be able to spend more."[12]

32.     The *McClatchy* article further reported that "[t]o aid their chosen candidates, [Heritage Action] is planning a three-pronged campaign in the 12 selected districts, set to launch

---

[10]    *See* Press Release, Heritage Action for America, *Heritage Action to spend $2.5 million and back 12 candidates this November* (Aug. 8, 2018), https://heritageaction.com/press/heritage-action-to-spend-2-5-million-and-back-12-candidates-this-november (last accessed May 3, 2022).

[11]    *Id.* The "targeted candidates" were IA-01 - Rod Blum; KY-06 - Andy Barr; MI-08 - Mike Bishop; MO-02 - Ann Wagner; NC-09 - Mark Harris; NC-13 - Ted Budd; NJ-11 - Jay Webber; NM-02 - Yvette Herrell; OH-01 - Steve Chabot; PA-10 - Scott Perry; PA-17 - Keith Rothfus; VA-07 - Dave Brat. *Id.*

[12]    Ex. 1 at 1 (Katie Glueck, *Conservative DC Group Throws Money to McGrath's Opponent, 11 Other Republicans*, MCCLATCHY (Aug. 8, 2018)).

the second week of September, after Labor Day. It will include three to five pieces of direct mail, an online advertising effort, and TV ad buys either on Fox News or on broadcast television[.]"[13]

33.    *McClatchy* interviewed Heritage Action Executive Director Tim Chapman for the article and summarized his comments that Heritage Action's "involvement should be considered more significant than the dollar figure alone suggests, because their name brand resonates with the many conservative activists Heritage has cultivated over the years."[14]

34.    Mr. Chapman also told *McClatchy* for the August 8, 2018 article*:*

"What we're telling donors is, every dollar we raise over our budget we can effectively pour more into these races," he said, adding, "we feel really strongly that the dollars we spend, we'll punch above our weight, because we have a brand name."

He added that if this new effort is successful, he would expect the organization to ramp up their political involvement headed into the next campaign cycle.

"If we are able to make a difference and this is a good, positive experience for us this fall, I think we end up doing more in the 2020 cycle," he said. "We'd have to raise significantly more to get involved in the Senate and presidential, but I'm not ruling it out."[15]

35.    On September 19, 2018, Heritage Action filed a 48-hour report with the Commission disclosing that it had spent $374,177 on independent expenditures in the form of mailers and digital advertising supporting the same twelve candidates named in the August 8, 2018 Heritage Action press release and the *McClatchy* news article.[16]

_____

[13]    *Id.* at 2.

[14]    *Id.* at 3.

[15]    *Id.*

[16]    Heritage Action for America, 48-Hour Report of Independent Expenditures Made and Contributions Received, FEC Form 5 (filed Sept. 19, 2018), https://docquery.fec.gov /pdf/481/201809199122005481/201809199122005481.pdf (last accessed May 3, 2022).

36.     The September 19 48-hour report revealed that Heritage Action disseminated the independent expenditure communications on September 17 and 19, 2018.[17] Of the total amount disclosed by the report, $233,585 was disseminated on September 17, 2018, and $140,592 on September 19, 2018.[18]

37.     The September 19 48-hour report included a note stating: "Please note that the independent expenditures disclosed on this report were paid for from general treasury funds and no contributions were made for the purpose of furthering *these* expenditures."[19]

38.     On October 12, 2018, Heritage Action filed a quarterly report, covering the period from July 1, 2018 to September 30, 2018, disclosing the same $374,177 it previously reported spending on independent expenditures supporting the same twelve candidates named in the August 8 Heritage Action press release and the *McClatchy* news article.[20]

39.     Like the September 19 48-hour report, the October 12 quarterly report disclosed that Heritage Action disseminated $233,585 of the reported independent expenditures on September 17, 2018, and $140,592 on September 19, 2018.[21]

40.     Heritage Action's October 12 quarterly report also included a note stating: "Please note that the independent expenditures disclosed on this report were paid for from general treasury

---

[17]     *Id*. at 3–22.

[18]     *Id.*

[19]     *Id.* at 2 (emphasis added).

[20]     Heritage Action for America, October 15 Quarterly Report of Independent Expenditures Made and Contributions Received, FEC Form 5 (filed Oct. 12, 2018), https://docquery.fec.gov/pdf/121/201810129124534121/201810129124534121.pdf (last accessed May 3, 2022).

[21]     *Id.* at 3–22.

funds and, to the best of my knowledge, information, and belief at the time of filing, no reportable contributions were made for the purpose of furthering *these* expenditures."[22]

41.     The October 12 quarterly report does not disclose any contributors to Heritage Action.

42.     Heritage Action has never amended or supplemented its October 12 quarterly report to disclose its contributors as required by the Contributor-Reporting Requirements.

43.     In addition to the independent expenditures described above, Heritage Action made more than $1 million in additional independent expenditures to House candidates during October 2018.[23] Although Heritage Action reported these expenditures to the FEC in a year-end report on January 24, 2019[24] (a quarterly report that covered the period from October 1 through December 31, 2018), Defendant Heritage Action failed to report any contributors and instead stated: "Please note that the independent expenditures disclosed on this report were paid for from general treasury funds and, to the best of my knowledge, information, and belief at the time of filing, no reportable contributions were made for the purpose of furthering these expenditures."

## ADMINISTRATIVE PROCEEDINGS & PROCEDURAL HISTORY

44.     On October 16, 2018, CLC and an individual, Margaret Christ, filed an administrative complaint against Defendant with the FEC, seeking enforcement of FECA's

---

[22]     *Id.* at 2 (emphasis added).

[23]     *See* Press Release, Heritage Action for America, *Heritage Action Releases Television Ads for Nine Targeted Districts in the 2018 Midterm Election* (Oct. 10, 2018), https://heritageaction.com/press/heritage-action-releases-television-ads-for-nine-targeted-districts-in-the-2018-midterm-election (last accessed May 3, 2022).

[24]     *See* Heritage Action for America, January 31 Year-End Report of Independent Expenditures Made and Contributions Received, FEC Form 5 (filed Jan. 24, 2019), https://docquery.fec.gov/pdf/366/201901249143958366/201901249143958366.pdf (last accessed May 3, 2022).

disclosure reporting requirements after Heritage Action failed to disclose its contributors for its independent expenditures under 52 U.S.C. § 30104.[25]

45.     On October 22, 2018, the FEC sent CLC and Christ a letter acknowledging receipt of the administrative complaint and designating it Matter Under Review 7516.[26]

46.     The underlying administrative complaint was pending before the FEC for over 850 days. The Commission did not announce any action on CLC's complaint, nor did it provide any public indication that the Commission had acted or planned to act on the complaint.

47.     FECA provides administrative complainants with a right of action against the FEC if the FEC fails to act on an administrative complaint within 120 days. If the court determines that the agency's delay was unlawful, it "may declare that . . . the failure to act is contrary to law and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C).

48.     On February 16, 2021—over 850 days after CLC filed its administrative complaint in this matter in October 2018—CLC filed a civil action against the FEC in the U.S. District Court for the District of Columbia under 52 U.S.C. § 30109(a)(8)(A), seeking to address the Commission's failure to timely act on CLC's administrative complaint. *See* Complaint, *Campaign Legal Ctr. v. FEC*, No. 1:21-cv-406-TJK (D.D.C.), ECF No. 1.

49.     The FEC failed to enter an appearance or otherwise defend the action.

---

[25]     *See* Ex. 2 (FEC Admin. Compl.).

[26]     *See* Ex. 3 (FEC Admin. Compl. Acknowledgment Letter (October 22, 2018)).

50.     CLC filed an Affidavit for Default on May 5, 2021, and the Clerk of Court accordingly entered default against the FEC on May 10, 2021.

51.     The FEC continued to not defend the action and no party intervened in the case, including Defendant Heritage Action.

52.     CLC then filed a Motion for Default Judgment on May 24, 2021, arguing that the FEC's failure to act on CLC's administrative complaint is contrary to law under the factors established in *Common Cause v. FEC*, 489 F. Supp. 738, 744 (D.D.C. 1980), and *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984).

53.     On March 25, 2022, the Court entered an order granting CLC's Motion for Default Judgment. *See* Order, *Campaign Legal Ctr. v. FEC*, No. 1:21-cv-406-TJK (D.D.C.), ECF No. 16.[27] The Court ruled that "CLC has standing to pursue its claim against the FEC because it seeks the information it claims Heritage Action unlawfully withheld"; that "the FEC has failed to act on CLC's supported, credible complaint alleging violations of FECA"; and that "the FEC's failure to act on CLC's administrative complaint is contrary to law." *Id.* at 1-2. The Court ordered the FEC to conform to the Court's order by acting on Plaintiff's administrative complaint within 30 days. *Id.* at 2.

54.     The 30-day period for the FEC to conform to the default judgment order expired on April 25, 2022, with no action by the FEC. On May 3, 2022, the Court issued an Order declaring that the FEC "has failed to conform" to the March 25 Order and ordering that, "[p]ursuant to 52 U.S.C. § 30109(a)(8)(C), Plaintiff Campaign Legal Center may bring 'a civil action to remedy the

---

[27]     *See* Ex. 4 (March 25, 2022 Order).

violation involved in the original complaint' against" Heritage Action. Order at 2, *Campaign Legal Ctr. v. FEC*, No. 1:21-cv-406-TJK (D.D.C.), ECF No. 23 (citation omitted).[28]

55.     Plaintiff CLC now files this action under 52 U.S.C. § 30109(a)(8)(C) to remedy Heritage Action's continuing violations of FECA's Contributor-Reporting Requirements and to obtain the information to which CLC and the public has long been entitled.

## CAUSE OF ACTION

### Failure to Disclose Contributors in Violation of 52 U.S.C. § 30104(c)

56.     Plaintiff restates and incorporates by reference all allegations above as though fully set forth in this paragraph.

57.     Under FECA's Contributor-Reporting Requirements, a person other than a PAC that makes independent expenditures aggregating in excess of $250 in a calendar year must file a quarterly report with the Commission disclosing, among other things, the identification of each "person (other than a political committee) who makes a contribution to the reporting [entity] during the reporting period . . . in excess of $200 within the calendar year," 52 U.S.C. § 30104(b)(3)(A) (cross-referenced in *id.* § 30104(c)(1)), and "the identification of each person who made a contribution in excess of $200 to the person filing such statement which was made for the purpose of furthering an independent expenditure," *id.* § 30104(c)(2)(C); *see also CREW*, 316 F. Supp. 3d at 376-77.

58.     As a person other than a PAC, Defendant is required to comply with FECA's Contributor-Reporting Requirements when it makes independent expenditures aggregating in excess of $250 in a calendar year. *See* 52 U.S.C. § 30104(c); *see CREW*, 316 F. Supp. 3d at 369.

---

[28]     *See* Ex. 5 (May 3, 2022 Order).

59.     Despite having made in excess of $250 in independent expenditures in 2018, Defendant failed to comply with FECA's Contributor-Reporting Requirements by reporting the identification of its contributors to the FEC on its mandated FEC disclosure reports.

60.     By failing to disclose the information required by FECA, Defendant has harmed and continues to harm Plaintiff CLC by depriving it of information to which it is statutorily entitled, and which CLC uses to carry out its organizational mission, including assisting voters in evaluating candidates for public office.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiff requests that this Court:

(1)     Declare that Defendant Heritage Action violated its disclosure obligations under 52 U.S.C. § 30104;

(2)     Order Defendant to provide Plaintiff, via public filing with the FEC, with the information to which it is legally entitled under FECA and FEC regulations, including the identification of all sources of contributions that must be disclosed under the Act;

(3)     Order Defendant to file corrective reports with the FEC for each report in which Defendant failed to comply with its disclosure requirements;

(4)     Assess an appropriate civil penalty against Defendant in accordance with 52 U.S.C. § 30109 and 11 C.F.R. § 111.24, to be paid to the United States, for each violation Defendant is found to have committed;

(5)     Award Plaintiff its costs and reasonable attorneys' fees incurred in this action; and

(6)     Grant such other relief the Court may deem just and proper.

May 5, 2022

Respectfully submitted,

/s/ *Molly E. Danahy*
Molly E. Danahy (DC Bar No. 1643411)
Adav Noti (DC Bar No. 490714)
Kevin P. Hancock*^
Hayden Johnson (DC Bar No. 1671830)†^

CAMPAIGN LEGAL CENTER
1101 14th Street NW, Ste. 400
Washington, DC 20005
(202) 736-2200
mdanahy@campaignlegalcenter.org
anoti@campaignlegalcenter.org
khancock@campaignlegalcenter.org
hjohnson@campaignlegalcenter.org

*Counsel for Plaintiff Campaign Legal Center*

*\* Barred in the State of New York. Not admitted to the D.C. Bar. Practicing under the supervision of Adav Noti, member of the D.C. Bar.*

*^ Application for pro hac vice admission forthcoming*

*† D.D.C. Bar application for admission pending*